IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN MCCOY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CCA HOLDINGS CORPORATION, ET AL.,<br><br>　　　　Defendants. | Case No.: C 11-05054-PSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT; ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 33, 34)** |

Plaintiff John McCoy ("McCoy") asserts that Defendants CCA Holdings Corporation, its successor corporation Charter Communications, Inc., and Charter Communications Properties LLC (collectively "Charter") have continued to use underground cables running through his property despite the fact that Charter terminated its lease with McCoy and agreed to remove the cables. McCoy also asserts that Charter installed new underground cables on his property after termination of the lease and without his knowledge. Charter allegedly uses the cables to provide internet, telephone, and television services to its subscribers among the residents of two mobile home parks that border McCoy's property. McCoy's complaint alleges claims for trespass, fraud, and breach of contract.

Case No.: 11-5054-PSG
ORDER

Charter seeks summary judgment or, in the alternative, summary adjudication with respect to all three claims. McCoy opposes Charter's motion and additionally seeks leave to file a First Amended and Supplemental Complaint ("FAC") that expands upon the trespass claim and withdraws the fraud and contract claims. Charter opposes the motion for leave to amend.

The court having reviewed the briefs, supporting evidence, and applicable law, as discussed herein,

IT IS HEREBY ORDERED that McCoy's motion for leave to amend is GRANTED and Charter's motion for summary judgment or, in the alternative, summary adjudication is DENIED.

## I.   BACKGROUND

McCoy filed this action in the Santa Cruz County Superior Court on August 16, 2011.[1] Charter removed the action to this court on the basis of diversity of citizenship.[2] In 1994, McCoy acquired real property located at 1027 Rosedale Avenue in Capitola, California ("the Rosedale property").[3] At that time, Charter's predecessor in interest, Sonic Communications/Sonic Cable Television ("Sonic"), had a month-to-month tenancy allowing it to maintain cables and other equipment on and under the Rosedale property.[4] In 1996, McCoy and Sonic subsequently entered into a written lease agreement.[5] In 1997, they entered into an addendum under which Sonic agreed to remove its equipment, including the underground cables.[6] In 1998, Charter acquired Sonic's rights and obligations under the lease and addendum.[7] Charter received an extension to August 31, 1998 to remove its equipment from the property.[8] Charter subsequently terminated the lease

---

[1] *See* Docket No. 1.

[2] *See id.*

[3] *See id.* ¶¶ 1, 6. All facts taken from the complaint do not appear to be in material dispute.

[4] *See id.* ¶ 7.

[5] *See id.* ¶ 8.

[6] *See id.* ¶ 9.

[7] *See id.* ¶ 11.

[8] *See id.* ¶ 13.

2

Case No.: 11-5054-PSG
ORDER

effective January 1, 1999 and informed McCoy that removal of the equipment and underground cables had been completed.[9]

In fact, Charter did not remove a shed built on a concrete pad before its deadline.[10] There was no equipment in the shed or on the pad.[11] There were some cables protruding out of the ground at the side of the pad; all of the cables had been severed above ground.[12] McCoy believed that Charter had ceased sending communications signals through cables located on his property.[13] However, he received complaints from the City of Capitola that the shed was an eyesore and was being used by vagrants.[14] Because he was concerned that he would be required to incur the expense of removing the shed and pad, he sent a letter dated December 30, 1998 to Charter demanding removal of its facility.[15]

Over a decade later, on April 30, 2009, while McCoy was having the Rosedale property graded for a development project, a live underground cable was severed.[16] McCoy claims that was the first inkling he had that Charter had continued to use cables under his property after the termination of the lease.[17] The City of Capitola directed McCoy not to interrupt the service[18] provided by the cables on his property.[19] As a result, McCoy suspended work on his development

---

[9] *See id.* ¶¶ 15-16.

[10] *See* Docket No. 35-1, ¶ 5.

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *See id.* ¶ 6.

[15] *See id.*

[16] Docket No. 35-1, Ex. A, ¶ 5.

[17] *Id.* ¶¶ 5,6.

[18] Charter's hearsay objection to this statement is overruled. McCoy may testify as to directions he personally received from the City.

[19] *See id.* ¶ 6.

3

Case No.: 11-5054-PSG
ORDER

1 project so that Charter could locate and move the cables off his property.[20] The delay increased the project's cost by thousands of dollars.[21] McCoy subsequently tried to negotiate with Charter for a long-term lease with respect to use of cables on the Rosedale land.[22] In May 2010, McCoy saw individuals on his land digging up buried cable and either removing or disconnecting it.[23] At that point McCoy assumed that the negotiations were at an end and that Charter had ceased using his property.[24] He filed this action approximately one year later.

On June 1, 2012, Charter filed the present motion for summary judgment, addressing the claims for trespass, fraud, and breach of contract contained in the operative complaint. McCoy opposes that motion and seeks to file a FAC that omits the fraud and contract claims but expands the trespass claim by adding allegations that Charter continues its unauthorized use cables on his property to this day.[25] The proposed FAC also alleges that Charter installed and is continuing to use cables on portions of the Rosedale property that were never covered by the parties' lease.[26] The FAC alleges that between 2001 and 2006, the City of Capitola repeatedly threatened to terminate Charter's franchise if Charter did not upgrade its service.[27] The proposed FAC further alleges that in 2006, Charter entered the Rosedale property without seeking McCoy's consent and installed new underground cable in order to provide the level of service required by the City.[28]

## II.   MOTION FOR LEAVE TO AMEND

The court's case management order dated November 21, 2011 required that any amendments

---

[20] *See id*.

[21] See *id*.

[22] See *id*. ¶ 7.

[23] See *id*.

[24] See *id*.

[25] *See* Docket No. 33-2, ¶ 16.

[26] *See id*. ¶ 17.

[27] *See id*. ¶ 20.

[28] *See id*. ¶ 21.

to pleadings be made within sixty days, or by January 20, 2012.[29] McCoy's motion for leave to amend the complaint was not filed until June 15, 2012, well beyond the January deadline.[30] McCoy should have moved to modify the scheduling order prior to or in conjunction with seeking leave to amend the complaint.[31] The court could deny his motion based solely upon his failure to do so.[32] However, in the exercise of its discretion, the court will treat McCoy's motion as a *de facto* motion to modify the scheduling order.[33]

"A schedule may be modified only for good cause and with the judge's consent."[34] If McCoy demonstrates good cause for modification of the scheduling order, the court will consider whether amendment of the complaint is appropriate under Federal Rule of Civil Procedure 15(a).[35] "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."[36]

McCoy states in his declaration that when he filed the original complaint, he believed that Charter had continued using cables on his land after expiration of the lease until May 2010, when he believed that Charter had dug up and removed its cables.[37] However, during discovery Charter produced an email dated May 10, 2010 from Charter's construction supervisor to an unknown individual discussing the need to move Charter's "coax cable" off of McCoy's property and onto the

---

[29] *See* Docket No. 19.

[30] *See* Docket No. 33.

[31] *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992).

[32] *See id.*

[33] *See Liberty Mut. Inc. Co. v. Cal. Auto Assigned Risk Plan*, No. C-11-1419 MMC, 2012 WL 3277213 (N.D. Cal. Aug. 9, 2012).

[34] Fed. R. Civ. P. 16(b)(4).

[35] *See Johnson*, 975 F.2d at 608.

[36] *Id*. at 609.

[37] *See* Docket No. 33-6, ¶ 3.

5

Case No.: 11-5054-PSG
ORDER

property of a neighboring mobile home park, Turner Lane Estates.[38] Attached to the email was an extensive proposal intended for presentation to the Turner Lane Board.[39] McCoy did not see any documents in Charter's discovery production showing that the plan to move the referenced cables off his property ever had been implemented.[40] He requested assurances from Charter that it no longer was using cables on his property.[41] Charter did not provide the requested assurances.[42] In late April or early May 2012, McCoy used a ladder to climb a ten-foot wall near his property line where it adjoined Turner Lane Estates.[43] He discovered what he believed to be cable running to Turner Lane Estates and to another mobile home park bordering his property, Cabrillo Estates.[44] McCoy then hired UtiliQuest, a company in the business of locating underground cables.[45] By May 24, 2012, UtiliQuest determined that cables on the Rosedale property were transmitting live signals from Charter to homes in Turner Lane Estates.[46]

The court concludes that McCoy has demonstrated good cause to modify the scheduling order so that he may seek to amend his complaint. Discovery materials produced in March 2012 led him to believe that Charter might not have removed the cables from his property. He sought assurances from Charter that it was not trespassing on his property, to no avail. He had to climb a ten-foot wall to discover what he thought might be cables leading from his property to neighboring mobile home parks, and he had to hire a specialist to confirm that his suspicions were correct and that the cables are still live.

---

[38] *See id*. ¶ 8 and Exh. 4.

[39] *See id*.

[40] *See id*. ¶ 8.

[41] *See id*.

[42] *See id*.

[43] *See id*.

[44] *See id*.

[45] *See id*.

[46] *See id*.

6

Case No.: 11-5054-PSG
ORDER

Charter objects to McCoy's declaration and to documents attached thereto. The objections are well-taken in large part. However, the statements relied upon by the court are within McCoy's personal knowledge, and the documents relied upon by the court – Bates 556 and 557 – are authenticated by McCoy's attorney, John Fowler, who declares that they were produced by Charter during discovery. The documents are authored by Charter's construction supervisor, and thus constitute party admissions.

Charter also argues that McCoy was not diligent because he should have become suspicious that Charter was continuing to use cables on his land long before March 2012. In essence, Charter argues that McCoy should have acted despite its representations. Charter agreed to remove its equipment, including cables, in 1998.[47] McCoy believed that Charter had done so, except for an abandoned shed and some cables that were severed above ground level.[48] McCoy discovered that live cables remained on his land in 2009, when one was severed during grading of the land.[49] He reasonably believed that Charter removed those cables because even after they were discovered, Charter did not enter into a new lease but was observed digging up cables on the Rosedale property.[50] In this record, the court cannot say that a reasonable person in McCoy's position would have acted differently.

Having concluded that McCoy has shown good cause to modify the scheduling order, the court next must consider whether he has shown that amendment is warranted under Rule 15(a).[51] "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint."[52] There is no evidence of bad faith.

---

[47] Docket No. 35-1, Exh. A.

[48] *Id.* ¶ 5.

[49] Docket No. 33-6, ¶ 5.

[50] *Id.* ¶ 7.

[51] *See Johnson*, 975 F.2d at 608.

[52] *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

7

Case No.: 11-5054-PSG
ORDER

Undue delay has been addressed above in the context of the discussion on diligence. There would be some prejudice to Charter, as it may wish to conduct additional discovery with respect to the expanded trespass allegations. However, the facts relevant to Charter's continued use of cables on McCoy's land are uniquely within Charter's possession. The proposed amendment would not be futile for the reasons discussed below. Finally, McCoy has not previously amended the complaint. Weighing all of these factors, and viewing the record as a whole, the court concludes that the proposed amendment is warranted.

### III. MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[53] The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[54] If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[55] A genuine issue for trial exists if there is sufficient evidence for a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, to return a verdict for the nonmoving party.[56] If the nonmoving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law."[57]

Charter contends that McCoy's trespass claim is time-barred under the "appreciable harm rule." The case upon which Charter relies for definition and discussion of "appreciable harm," *Cyr v. McGovran*,[58] was vacated three days before Charter filed its motion for summary judgment.

---

[53] Fed. R. Civ. P. 56(a).

[54] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[55] *See* Fed. R. Civ. P. 56(e).

[56] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[57] *Celotex*, 477 U.S. at 323.

[58] 204 Cal. App. 4th 1471 (2012).

However, the subsequent decision[59] states as follows: "While '[t]he mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm – not yet realized – does not suffice to create a cause of action for negligence,' an action accrues, and the statute begins to run, as soon as the plaintiff suffers 'appreciable harm' from the breach."[60] Moreover, "[t]he violation of one primary right constitutes a single cause of action."[61] Applying these rules to the case at hand, Charter contends that the "primary right" violated in this case is an oral contract between McCoy and Charter, and that the "appreciable harm" arising from breach of that oral contract occurred in January 1999 when McCoy realized that Charter had failed to remove the shed and concrete pad.

The court is puzzled by Charter's insistence that "the breach of oral contract pertaining to the Rosedale property is the gravamen of McCoy's cause of action."[62] The first claim set forth in the original complaint is for trespass, and in particular Charter's unauthorized continued use of cables on McCoy's property. The second claim is for fraud. The last claim, comprising approximately one page, is for breach of contract. The claim is based upon "lease agreements, addends and the parties' oral agreement."[63] No details of the oral agreement are provided. Moreover, the court has granted McCoy leave to file the proposed FAC, which asserts a single claim for trespass. "A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it."[64] The thrust of McCoy's claim thus is that Charter installed and maintained active cables on his land without his knowledge or consent, thus depriving him of exclusive possession. Under these circumstances the court is unpersuaded by Charter's assertion that the real crux of the case is a claim for breach of oral

---

[59] *Cyr v. McGovran*, 206 Cal. App. 4th 645 (2012).

[60] *Cyr*, 206 Cal. App. 4th at 652 (quoting *Smith v. SHN Consulting Engineers & Geologists, Inc.*, 89 Cal. App. 4th 638, 650–651 (2001)) (alteration in original).

[61] *Id.*

[62] Docket No. 29, at 9.

[63] Docket No. 1, at 8.

[64] *Capogeannis v. Superior Court*, 12 Cal. App. 4th 668, 674 (1993) (internal quotation marks and citation omitted).

9

Case No.: 11-5054-PSG
ORDER

contract.

Charter contends that the trespass claim accrued in January 1999, when it was obvious that Charter had left behind the shed and concrete pad. Charter relies heavily upon the December 1998 letter that McCoy sent to Charter, demanding that Charter remove its "facility." But as discussed above, McCoy states that he sent that letter because he was getting pressure from the City to remove the shed and he did not want to be stuck with the expense.[65] Nothing in the record indicates that McCoy's knowledge that Charter had left behind a shed somehow imbued him with knowledge that Charter also had left behind working underground cables. Charter has not cited any authority for the proposition that its abandonment of a shed on the property must be considered as part and parcel of its subsequent use of cables buried under the property. Moreover, the FAC alleges that in 2006, Charter entered the Rosedale property without seeking McCoy's consent and installed new underground cables in order to meet the City's demands for an increased level of service.[66] It is not apparent how a claim based upon unauthorized installation of new cables in 2006 could have accrued seven years earlier in 1999.

Charter asserts that any trespass is permanent in nature rather than continuing. McCoy responds by acknowledging case law holding that underground cables generally are considered a permanent nuisance,[67] but points to evidence in the record that Charter intended to move its cables off of the Rosedale property.[68] McCoy later argues there is at least a triable issue as to whether the cables constitute a permanent nuisance. The court agrees. Moreover, McCoy points to his allegations that Charter's employees entered his property without permission on multiple occasions, to install or maintain different cables.[69] Each of those entries arguably constituted a separate trespass. Charter has not presented evidence suggesting that its employees did not enter the

---

[65] Docket No. 35-1, ¶ 6.

[66] Docket No. 33-2, ¶ 21.

[67] *See, e.g.*, *Spar v. Pac. Bell*, 235 Cal. App. 3d 1480, 1486 (1991).

[68] *See* Docket No. 35-1, Exh. B.

[69] *See* Docket No. 33-2, Exh. A, ¶ 21.

1 property on multiple occasions without McCoy's consent.

2 Finally, triable issues exist as to when McCoy reasonably discovered the trespass.  In California, a claim generally accrues, and the applicable limitations period begins to run, when the plaintiff has suffered damages from a wrongful act.[70]  "However, this rule has an important exception, referred to as the discovery rule, that postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."[71]  "But the rule is not so broad as to delay accrual indefinitely until the plaintiff stumbles upon a claim."[72]  "Rather, the plaintiff need only be aware of his or her injury and have knowledge of sufficient facts to place him or her on actual or inquiry notice" of the wrong.[73]  As discussed above in the context of McCoy's diligence under Rule 16, McCoy claims that he did not become aware that Charter continued to use cables on his property until one was severed in 2009.  For the reasons that it concludes that good cause exists to modify the case schedule, the court likewise concludes that there is at least a triable issue as to whether McCoy reasonably should have discovered Charter's continued use of cables on his property prior to 2009.  McCoy filed the action less than three years after the severed cable incident, in 2011.[74]

### IV.   CONCLUSION

In light of the foregoing, the court concludes that McCoy has demonstrated that leave to amend the complaint is warranted, and that Charter has failed to demonstrate that it is entitled to summary judgment. McCoy shall file his amended complaint in accordance with the court's July 20, 2012 order extending deadlines.

---

[70] *See Lyles v. State of Calif.*, 153 Cal. App. 4th 281, 286 (2007).

[71] *Id.* (internal quotation marks and citation omitted).

[72] *Id.*

[73] *Id.* at 286-87.

[74] The limitations period for trespass is three years.  *See* Cal. Civ. P. § 338(b).

11
Case No.: 11-5054-PSG
ORDER

**IT IS SO ORDERED.**

Dated: 10/1/2012

PAUL S. GREWAL
United States Magistrate Judge

Case No.: 11-5054-PSG
ORDER